NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0781n.06
Filed: December 23, 2008

No. 05-1853

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| RAYMOND HURST | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| ANDREW JACKSON, Warden | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| Respondent-Appellee. | ) | MICHIGAN |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

BEFORE:    KEITH, MERRITT, and GIBBONS, Circuit Judges.

   **DAMON J. KEITH, Circuit Judge.**   Petitioner Raymond Hurst ("Hurst") appeals the district court's dismissal of his petition for a writ of habeas corpus. His appeal raises one issue for review: whether a taint analysis should have been used to decide if his self-written confession was involuntary. This issue turns on whether Hurst's self-written confession followed a prior involuntary confession. Because it did not, we **AFFIRM** the district court's decision to dismiss Hurst's petition.

**I.**

   On August 7, 2000, Hurst was convicted of shooting and killing Maceo Vanover and of possessing a firearm during the commission of a felony, based in large part on a self-written confession admitted into evidence during trial. Hurst received a life sentence plus two years. The

Michigan Court of Appeals affirmed Hurst's conviction, and among other findings, held that Hurst did not suffer police coercion such that his waiver of *Miranda* rights and decision to make a statement should be considered void. *People v. Hurst*, No. 230517, slip op. at 2 (Mich. Ct. App. April 12, 2002). The Michigan Supreme Court declined to review Hurst's appeal. *People v. Hurst*, 467 Mich. 913, 654 N.W.2d 333 (2002). Hurst then filed a *pro se* writ for habeas corpus pursuant to 28 U.S.C. § 2254 (1996) in the United States District Court for the Eastern District of Michigan, which was denied on May 24, 2005, along with his request for a certificate of appealability and a request for leave to proceed on appeal *in forma pauperis*. *Hurst v. Jackson*, No. 70863, slip op. at 1, 8 and 21 (E.D. Mich. May 24, 2005). The district court held that "[h]aving reviewed the record, this Court is convinced that the state court's determination that Petitioner's confession was voluntary is neither contrary to United States Supreme Court precedent nor an unreasonable application of federal law or the facts," for the following reasons: (1) Hurst failed to establish police coercion; (2) he was 25 years old when he made his handwritten statement, could read and write, and had a 10th grade education; and (3) he was advised of his *Miranda* rights by three different police officers, stated that he understood those rights, and signed a constitutional waiver form. *Hurst*, No. 70863, slip op. at 11-12. The district court also found during the thirty or more hours Hurst was in custody before he gave his written statement, that he ate at least one meal, slept for eight hours, and was not continuously questioned by police officers. *Id.* at 12. There was also no evidence Hurst was physically or mentally impaired at the time he gave his statement. *Id.*

Hurst filed a notice of appeal in this Court on June 20, 2005 that was denied on February 24, 2006. On April 28, 2006, a panel from this Court issued a certificate of appealability on Hurst's claim that his self-written confession was involuntary – the subject of the present appeal.

During the course of police interrogations, Hurst made three confessions (an oral confession to Detroit Police Investigator Andrew Sims, a handwritten confession given to Investigator Sims, and an oral confession to Detroit Sergeant Nicholas Giaquinto). A pre-trial state court evidentiary hearing was held and only the last of those three confessions, his confession to Sergeant Giaquinto, was deemed involuntary. The relevant police interrogation began on January 24, 2000 at 1:20 p.m. and ended the next day at 10:10 p.m. During this time, Hurst spoke with three people (Detroit Police Officer Lonze Reynolds, Sergeant Giaquinto, and Investigator Sims), was advised of his *Miranda* rights three times, and waived his *Miranda* rights three times. Hurst also agreed to undergo a polygraph examination. It was during a post-polygraph interrogation conducted by Investigator Sims that Hurst made his first oral confession. At Investigator Sims' request, Hurst then wrote on a piece of paper: "I went in the apartment building. He broke in my girl's apartment. He said he was going to kill me and my girl so I went out on the corner and shot him. My girl was going to have my baby so I had to protect her." *Hurst*, No. 70863, slip op. at 4. Sergeant Giaquinto, who was observing this interrogation from another room, entered the examination room and reduced to writing an oral confession that he asked Hurst to narrate.

In the evidentiary hearing during state trial court proceedings, Hurst's oral statement, reduced to writing by Sergeant Giaquinto, was deemed involuntary. However, the trial court explicitly denied the motion to suppress the statement handwritten by Hurst.

## II.

As a threshold matter, the Government asserts Hurst's claim is unexhausted and, therefore, this Court lacks jurisdiction to hear this appeal. Hurst, however, has fully and fairly presented the substance of his argument, having presented it in the state courts and district court as a federal

constitutional issue (a due process violation, resulting from an involuntary confession), under the same theory in which it is presented to this Court. *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987) (noting that a "habeas petitioner must present his claim to the state courts as a federal constitutional issue") (citations omitted); *Sowell v. Bradshaw*, 372 F.3d 821, 829 (6th Cir. 2004) (distinguishing between a variation in legal theory, which exhausts a claim, from a different legal claim) (citations omitted). In the state appellate court, Hurst specifically raised the argument presented here. *Hurst*, No. 230517, slip op. at 4-7. Our court, therefore, has jurisdiction to hear this appeal.

Additionally, because the state appellate court and the district court addressed the voluntariness of Hurst's confessions, this issue will be reviewed under the deferential Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. §§ 2241-2255 (1996) ("AEDPA") standard, in which the state court's decision will only be overturned if it "was contrary to, or involved an unreasonable application of" clearly established federal law or was an unreasonable application of the facts. 28 U.S.C. § 2254(d)(1)-(2); *see Williams v. Taylor*, 529 U.S. 362, 385-86 (2000) (discussing the deferential standard); *Miller v. Fenton*, 474 U.S. 104, 115-18 (1985) (discussing the "uniquely legal dimension" of the voluntariness of a confession). Voluntariness is a mixed question of law and fact that we review *de novo*. *Coomer v. Yukins*, 533 F.3d 477, 484 (6th Cir. 2008) (articulating the standard for legal questions) (citations omitted); *Van v. Jones*, 475 F.3d 292, 293 (6th Cir. 2007) (articulating the standard for mixed questions of law and fact).

**III.**

The ultimate inquiry in determining whether a confession is voluntary is whether it comports with the requirements of the Fourteenth Amendment's Due Process Clause. *Miller v. Fenton*, 474

U.S. 104, 110 (1985). This inquiry is based on an examination of the totality of the circumstances and requires a showing of coercive police activity to find involuntariness. *Jackson v. Mckee*, 525 F.3d 430, 433-34 (6th Cir. 2008). In the present appeal, the only new ground raised by Hurst to support his argument that his self-written confession should be deemed involuntary is his claim that, pursuant to *Lyons v. Oklahoma,* 322 U.S. 596, 603 (1944), a taint analysis should have been applied when considering whether his statement was compelled. Under *Lyons*, when a prior statement has been coerced, courts are to consider "the fact that the earlier statement was obtained from the prisoner by coercion" as a factor "in appraising the character of the later confession." *Id*. In some cases, "the effect of earlier abuse may be so clear as to forbid any other inference than that it dominated the mind of the accused to such an extent that the later confession is involuntary." *Id.*

Hurst's argument rests on alleged statements he made to Sergeant Giaquinto before he underwent the polygraph examination, statements he asserted the state trial court found to be involuntary. The evidentiary hearing transcript is ambiguous as to which statements were deemed involuntary, but it is clear that prior to Hurst's decision to undergo a polygraph test, the only statements Hurst made to Sergeant Giaquinto were exculpatory. Additionally, the state court excluded Hurst's oral confession reduced to writing by Sergeant Giaquinto based on the length of time that had passed from Hurst's initial denials to his final oral confession to Sergeant Giaquinto, stating that "[i]t was a long time between the time – the denials and then going over with the polygraph even though he told him – and then subsequently the statement that he wrote out and then after that he caves in all the way. It might be considered less than voluntary." (J.A. at 631). There is no evidence in the record to support the conclusion that any statements made prior to the polygraph examination were infected by the duration of interrogation. In fact, the opposite

conclusion is supported by the state court's finding that the handwritten confession, taken after the polygraph examination, was not involuntary. The record, therefore, compels the conclusion that Hurst's self-written confession did not follow a prior involuntary confession or statement.

The state trial court, the state appellate court and the district court, were therefore correct in evaluating Hurst's handwritten confession without applying a taint analysis. Furthermore, because this was the only new basis asserted in Hurst's appeal to demonstrate why his handwritten confession should be deemed involuntary, the finding that Hurst's self-written confession was voluntary must be upheld.

## IV.

For the foregoing reasons, we **AFFIRM** the district court's order denying Hurst's application for a writ of habeas corpus.

MERRITT, Circuit Judge, concurring. Perhaps this concurrence should be a dissent because it appears to me that there was no substantial evidence supporting conviction in this case other than the confession and the confession seems highly suspect because it was obtained under questionable circumstances according to the record. The problem here is that the factual record before us is incomplete, but the Anti-Terrorism and Effective Death Penalty Act of 1996 requires us to uphold state court findings of fact unless we are convinced they are in error. 28 U.S.C. § 2254(e)(1).[*] What we do know is that petitioner was arrested at 1:20 p.m. on January 24, 2000. He was told he could not use the telephone. Although petitioner apparently did not specifically ask for an attorney, he testified that he wished to call his mother to ask her to call his attorney. He was interrogated for several hours that afternoon by Officer Giaquinto, and he repeatedly denied involvement in the murder. He was then transferred to another floor in the jail that was dirty, having only an open privy, no shower and no bunks for sleeping, only pallets on the floor. The jail also lacked food preparation facilities, and the record seems to indicate that petitioner was not given anything to eat from the time he was arrested until he agreed to take a polygraph test the following afternoon at about 4:00 p.m. — a period of over 24 hours. He slept on the floor that night. He was not able to shower or conduct any other forms of personal hygiene. He was interrogated again for several hours the next morning. It appears that he was only given food because he agreed to take the polygraph test. The food

[*]28 U.S.C. § 2254(e)(1) states:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

consisted of two sandwiches and a drink.

A review of the trial court transcript from the state suppression hearing shows that the state court, in a conclusory fashion, suppressed as coerced the oral statements made both before and after the polygraph test but then admitted the short confession written by petitioner just after the test and before the more extended oral confession. I am in doubt because I have trouble seeing how it is possible logically or empirically for the short written confession to be voluntary but all other statements to be coerced. No factual findings supporting either aspect of the ruling were made by the trial court. In a situation where the factual record is not clear, AEDPA directs us to presume that the state court's factual findings are correct. We must indulge in a presumption of correctness and leave the state judgment alone unless we are "convinced." In the absence of "clear and convincing" evidence of coercion, I reluctantly join in the majority's decision.